Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| MICHELLE DAPENA GUZMÁN<br><br>Recurrente<br><br>Vs.<br><br>ADMINISTRACIÓN DE COMPENSACIONES POR ACCIDENTES DE AUTOMÓVILES (ACAA)<br><br>Recurrida | TA2025RA00410 | *REVISIÓN ADMINISTRATIVA* procedente de la Administración de Compensaciones por Accidentes de Automóviles<br><br>Sobre:  SUSPENSIÓN DE EMPLEO Y SUELDO |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez.

Cruz Hiraldo, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 27 de febrero de 2026.

Comparece la parte recurrente, la señora Michelle Dapena Guzmán, solicita la revocación de la *Resolución* notificada el 21 de noviembre de 2025 por la Administración de Compensaciones por Accidentes de Automóviles (ACAA). En la resolución recurrida la ACAA suspendió a la recurrente de empleo y sueldo por un plazo de treinta (30) días laborables.

Por medio de los fundamentos expuestos en esta Sentencia, *confirmamos* la resolución recurrida.

*-I-*

El 22 de octubre de 2025, la ACAA notificó a la recurrente una comunicación escrita con fecha de 14 de octubre de 2025. En la referida carta, la ACAA atribuyó a la recurrente las siguientes faltas de disciplina:

> Falta 76: Incurrir en conducta desordenada, que produzca alteraciones a la paz y/o clima de orden y respeto que debe prevalecer en las áreas de trabajo, tales como ruidos innecesarios, conversaciones estridentes o conducta de cualquier otra índole que cause distracción o molestias al personal en la unidad de trabajo o sus alrededores.

Falta 77: Provocar y/o participar en riñas, atacar físicamente a otro empleado, supervisor, director o visitante en la ACAA, sus predios, en o fuera de horas laborales y/o conducta constitutiva de acoso laboral, agresión, intento de agresión o "juegos de mano" a compañeros de trabajo, supervisores, directores, visitantes o cualquier otra persona mientras se llevan a cabo actividades relacionadas con el empleo.

Falta 78: Realizar actos amenazantes; usar lenguaje obsceno, grosero o irrespetuoso tanto verbal, corporal o escrito y/o atacar verbalmente a otros empleados, supervisores o cualquier otra persona en la ACAA.

Falta 80: Insubordinación o falta de respeto a un supervisor, incluyendo la negativa de hacer un trabajo o desobedecer órdenes escritas o verbales.

La misiva informó a la recurrente la intención del patrono de aplicar una suspensión de empleo y sueldo por treinta (30) días laborables debido a las infracciones a las normas de conducta laboral en la lista. Según apercibida en la notificación, la recurrida solicitó la celebración de una vista informal ante un Oficial Examinador. El 17 de noviembre de 2025 fue celebrada la vista adjudicativa, a la cual compareció la recurrente, mediante representación legal. La única prueba testifical desfilada en la vista fue el testimonio de la recurrente. La prueba documental consistió, en parte, del *Informe de Investigación* preparado por el Departamento de Recursos Humanos de la ACAA. Culminada la vista adjudicativa, el Oficial Examinador recomendó la imposición de una medida disciplinaria consistente en la suspensión de empleo y sueldo por un período de treinta (30) días laborables. El 21 de noviembre de 2025, la ACAA notificó a la recurrente la *Determinación Final*. La Directora Ejecutiva de la ACAA suspendió a la recurrente de empleo y sueldo por treinta (30) días laborables, según recomendado por el Oficial Examinador. Inconforme, la parte recurrente comparece ante este Tribunal de Apelaciones y señala los siguientes errores:

Erró la Administración de Compensaciones por Accidentes de Automóviles (ACAA) al imponer la sanción más severa y descansar en inferencias

subjetivas que disponen que la recurrente no tuvo reconocimiento genuino de las violaciones cometidas y al sostener una determinación de hecho de "agresión física" que no está apoyada por evidencia sustancial, y se basa en una reclasificación improcedente de una conducta distinta en violación al debido proceso de ley.

Erró la Administración de Compensaciones por Accidentes de Automóviles (ACAA) al penalizar a la recurrente por el ejercicio legítimo de su derecho a defenderse al presentar una querella administrativa y equiparar incorrectamente una determinación adversa con la presentación de una querella falsa; así como incorporar dicho procedimiento independiente como fundamento para las determinaciones de hecho y la imposición de la sanción disciplinaria, en violación al debido proceso de ley y a los principios de razonabilidad administrativa.

Procedemos a resolver con el beneficio de la comparecencia de las partes, el contenido del expediente administrativo y el derecho aplicable.

*-II-*

**A.**

Es norma reiterada que, las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues cuentan con el conocimiento experto de los asuntos a su cargo. *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019), *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012). Al momento de revisar una decisión administrativa, el criterio rector para los tribunales es la razonabilidad de la actuación de la agencia. *Graciani Rodríguez v. Garage Isla Verde, supra*, pág. 127; *González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013).

Igualmente, los tribunales debemos ejercer un juicio independiente al resolver si una agencia actuó dentro del marco de sus facultades estatutarias. *Vázquez v. Consejo de Titulares*, 2025 TSPR 5, pág. 15. Pero principalmente, los tribunales revisores no tenemos que otorgar deferencia a la interpretación de derecho que haga una agencia simplemente porque relegar a las agencias la función de interpretar las leyes, desafía el mandato de la LPAU

pues "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Sección 4.5, LPAU, 3 LPRA sec. 9675; *Vázquez v. Consejo de Titulares, supra*, págs. 14-15.

Las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. ARPE*, 167 DPR 684, 693 (2006). La revisión judicial debe limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, o en forma tan irrazonable que su actuación constituya un abuso de discreción. *Graciani Rodríguez v. Garage Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). La deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

### B.

Ley de Protección Social por Accidentes de Vehículos de Motor de 2020, Ley Núm. 111-2020, 9 LPRA sec. 3161 *et seq.* reconoce la capacidad jurídica de la Administración de Compensaciones por Accidentes de Automóviles como corporación pública del Gobierno de Puerto Rico, para entre otras gestiones proveer "una cubierta de servicios de salud a toda persona que sufra daños corporales, así como la enfermedad o muerte resultante de estos como consecuencia de un accidente de un

vehículo de motor como tal vehículo". Artículo 1, Ley Núm. 111-2020, 9 LPRA sec. 3161. Conforme a los poderes delegados en los Artículos 12 y 14 de la Ley Núm. 111-2020, la Junta de Directores de la ACAA aprobó el *Reglamento de Conducta, Medidas Correctivas y Acciones Disciplinarias de la Administración de Compensaciones por Accidentes de Automóviles* del 11 de diciembre de 2024 (Reglamento de Conducta).[1] El reglamento aplica a todos los empleados de la ACAA, indistinto a la clasificación del puesto.

La ACAA solo puede suspender de empleo y sueldo a un empleado por justa causa, previa notificación por escrito de formulación de cargos y apercibimiento de su derecho de comparecer a una vista administrativa informal. Artículo 3, Reglamento de Conducta. La Sección 6.1 del Artículo 6 del Reglamento de Conducta establece las obligaciones mínimas requeridas a todo empleado de la ACAA. En particular, desglosa los siguientes deberes:

> 2. Observar normas de comportamiento correcto, cortés y respetuoso en sus relaciones con supervisores, compañeros de trabajo y ciudadanos.
>
> 4. Acatar aquellas órdenes e instrucciones de sus supervisores compatibles con la autoridad delegada en éstos y con las funciones, actividades y objetivos de la ACAA.
>
> 8. Cumplir con las disposiciones de este reglamento y de las leyes, otros reglamentos, políticas, procedimientos, instrucciones u órdenes aplicables a su trabajo y a la ACAA.

La sección 10.2 del Reglamento de Conducta dispone el procedimiento para la aplicación de medidas disciplinarias cuya sanción pueda resultar en la suspensión de empleo y sueldo o la destitución del empleado:

> A. El supervisor inmediato del empleado preparará y presentará al director de departamento o regional un informe conteniendo los hechos relacionados con la falta cometida, el cual podrá incluir una

---

[1] El reglamento no aparece en el Registro Electrónico de Reglamentos del Departamento de Estado.

recomendación de la acción disciplinaria que el supervisor crea que los hechos ameriten.

B. El director de Recursos Humanos evaluará los hechos según presentados y de creerlo necesario, realizará una investigación justa, rápida e imparcial, con miras a emitir su recomendación al director ejecutivo.

Cuando el director ejecutivo entienda que procede alguna acción disciplinaria, notificará al empleado por escrito de la intención de la acción disciplinaria, incluyendo en el escrito los hechos por los cuales se fundamenta la misma, las disposiciones reglamentarias o legales infringidas y todas las medidas disciplinarias o correctivas a las que se expone. Además, se le notificará la oportunidad de exponer su versión de los hechos en una vista administrativa informal a celebrarse ante un oficial examinador de conformidad con los términos dispuestos en este reglamento.

### -III-

La Regla 59 de nuestro Reglamento requiere en cuanto al contenido del alegato de "una revisión judicial de una decisión administrativa una discusión de los errores señalados, incluyendo las disposiciones de ley y la jurisprudencia aplicable". Lo anterior debido a que, errores no discutidos en un recurso apelativo, se entienden renunciados y no serán considerados por los tribunales revisores. *Pueblo v. Miró González*, 133 DPR 839, 857 (1993). Igualmente, debido a la naturaleza del recurso y la presunción de corrección sobrevenida sobre el dictamen de la agencia, la parte recurrente queda obligada a demostrar la improcedencia de la decisión sobre la base del estándar de evidencia sustancial. Es su deber señalar aquella evidencia en el expediente que ayude a descobijar el manto de corrección sobre la actuación gubernamental a tal punto que nos convenza sobre la ausencia de apoyo de la determinación en evidencia sustancial incluida en el récord administrativo. Así se ha pautado jurisprudencialmente que:

La exigencia de que el escrito de apelación contenga un señalamiento de error y una discusión del mismo no es un mero preciosismo inconsecuente. Es en la discusión del error donde se enmarca la actuación alegadamente errónea del foro primario

cuya revocación se ha solicitado, a la luz de los hechos y del derecho aplicable. Es lo que se ha denominado "el corazón" de la apelación o "la artillería pesada". No podemos olvidar que el derecho, particularmente el derecho o práctica apelativa, es rogado.

*Morán v. Martí*, 165 DPR 356, 369 (2005).

El alegato de la parte recurrente falla en este aspecto, incumple con el reglamento al no discutir de forma fundamentada los errores que señaló. Es un pobre ejemplo de una revisión judicial al solo contener alegaciones en forma de conclusión y argumentos circulares. Es principio trillado en nuestra jurisdicción que "meras alegaciones no constituyen prueba". *Asoc. Auténtica de Empl. vs. Municipio de Bayamón*, 111 DPR 527, 531 (1981). Así que, en estricta hermenéutica judicial, no estamos obligados a considerar los méritos del recurso presentado. Añada que, la situación judicial en que se encuentra la parte recurrente, es únicamente atribuible a ella y a su representación legal. Por "regla general, y en ausencia de circunstancias que justifiquen lo contrario, todo litigante que escoge libremente a un abogado para que lo represente en un litigio no puede evitar las consecuencias de los actos y omisiones de tal agente". *Díaz v. Tribunal Superior*, supra, pág. 88; *Véase, Maldonado v. Srio. de Rec. Naturales*, 113 DPR 494, 497 (1982). *Landrum Mills Corp. v. Tribunal Superior*, 92 DPR 689, 692 (1965).

Ahora bien, en buena metodología adjudicativa, y en aras de impartir justicia, limitamos nuestra revisión judicial a corroborar la razonabilidad de la decisión recurrida. En otras palabras, ceñimos nuestra revisión a evitar actuaciones arbitrarias y caprichosas en violación a los reglamentos de la ACAA; a garantizar la protección y el respeto de los derechos fundamentales de la recurrente según establecidos en las constituciones del Estado Libre Asociado y de Estados Unidos de América; y asegurar que la decisión encuentra soporte en la evidencia en el expediente.

Sección 4.5, LPAU, 3 LPRA sec. 9675; *Torres Arzola v. Policía de P.R.*, 117 DPR 204, 212-213 (1986).

El 14 de octubre de 2025, la ACAA notificó a la recurrente su intención de suspenderla de empleo y sueldo por un término de treinta (30) días laborables. La medida disciplinaria propuesta se fundamentó en alegados comportamientos en contra del Reglamento de Conducta consistentes en la creación de un ambiente laboral hostil y ofensivo. Las conductas señaladas incluyen alteraciones abruptas de ánimo, agresividad, falta de control emocional durante reuniones —como lanzar una libreta y su teléfono celular— y actos de agresión física al pellizcar a uno de sus supervisados. La comunicación está fundamentada sobre el resultado de una investigación interna en la cual la investigadora concluyó que las conductas ocurridas, principalmente en reuniones con personal unionado y gerencial, generaron un ambiente laboral tenso y hostil en la Oficina Regional de Caguas.

La oficina de Recursos Humanos de la ACAA coordinó una serie de entrevistas con el personal de la Oficina Regional de Caguas, inclusive con la Directora de la Oficina Regional, para conocer la veracidad de las faltas de disciplina imputadas a la parte recurrente. El resultado de todas las entrevistas está recogido en un Informe de Investigación preparado por el Departamento de Recursos Humanos. El informe también contiene varias minutas de reuniones, en las cuales la parte recurrente participó y en las cuales demostró poco profesionalismo y decoro en su comportamiento hacia su supervisora inmediata, sus compañeros gerenciales y en contra de sus supervisados. El informe también contiene un número considerable de cartas y memorandos escritos por la supervisora inmediata de la recurrente. Escritos en los cuales quedaron plasmadas las conductas impropias de la recurrente.

De entrada, el expediente demuestra que la propia recurrida reconoció haber pellizcado a uno de su supervisados, el señor Daniel Olmo, pero que "lo hizo en son de broma para llamarle la atención al empleado cuando este se desenfoca en su área de trabajo". También y como excusa por haber tirado su celular y libreta sobre la mesa de reuniones indicó que "no puede controlar su ira y coraje y que no existe un botón para eso". El récord administrativo colige al menos tres instancias en las cuales la parte recurrente tiró su celular y libreta sobre la mesa cuando su supervisora inmediata o alguno de sus compañeros de trabajo hacían o decían algo con lo cual no estaba de acuerdo. En específico, según la carta escrita por la Directora Regional, con fecha del 15 de julio de 2025, dirigida a la Directora de Recursos Humanos de la ACAA, la parte recurrente:

> En al menos tres ocasiones recientes, la Subdirectora ha reaccionado de manera visible y verbalmente molesta, culminando con gestos hostiles como por ejemplo: haciendo ruido lanzando la libreta sobre la mesa del salón de conferencias. Este patrón de conducta resulta preocupante, ya que genera un ambiente de tensión e incomodidad entre los compañeros presentes.

La carta del 15 de julio de 2025 hace referencia a la reunión del equipo gerencial celebrada el 14 de julio de 2025, entre los asistentes estuvo la Directora de la Oficina Regional de Caguas y la Subdirectora de la oficina, la parte recurrente. Citamos el siguiente extracto de la minuta:

> La Directora preguntó si había algo más para discutir en la reunión y la Supervisora Nixsalis Cruz preguntó por unas Partes Policiacas y la Subdirectora alzó la voz y tiró su libreta en la mesa, contestándole a la Supervisora Nixsalis Cruz que no sabía porque ella no estaba. La Directora le dijo a la Subdirectora que bajara la voz y le volvió a repetir que se podía diferir pero todo con respeto y la Subdirectora le dijo que hay emociones que no se pueden bajar y que ella no estaba faltando el respeto.

Ese mismo día la Supervisora inmediata de la recurrente celebró una reunión con esta para amonestarla verbalmente por el

incidente ocurrido en la reunión del equipo gerencial. Conforme surge de la minuta de esa reunión, la Directora "le indicó que ya eso ocurrió una vez que tiró el celular en una situación de Dalys, luego en la situación de Milagros y hoy había sido la tercera vez en tirar la libreta, que debe mejorar esa parte". La "situación de Dalys" refiere a una reunión celebrada el 2 mayo de 2025 cuando la recurrente reaccionó airada a ciertos argumentos expresados por Dalys, la recurrente tiró su celular sobre la mesa y amenazó a Dalys con insubordinación. En cuanto a la costumbre de tirar la libreta y el celular, según carta escrita por una de las supervisoras del centro: "[e]n otras reuniones, cuando están discutiendo asuntos que particularmente le atañen, la Subdirectora, levanta la voz, tira el bolígrafo y la libreta sobre la mesa con un lenguaje corporal de molestia, muy evidente, cuando no tiene argumentos para defender su posición". La misma supervisora refirió otra situación a la Directora Regional, en la carta informó sobre la Subdirectora: "deseo informar que antes que usted llegara a esta Oficina Regional, tuve que escribir sobre una situación muy desagradable que pas[ó] con la misma". Conforme descrito por la supervisora: "[c]uando estuve sentada cerca de ella, hablaba en tono de voz alto, llamaba constantemente a Joanarys Ríos y daba con su mano constantemente sobre el escritorio" y que "interrumpe cuando las compañeras hablan y no sabe llevar una conversación".

En igual fecha, la Directora celebró otra reunión con la parte recurrente, esta vez para amonestarla sobre el pellizco hacia el señor Olmo. La Minuta de la reunión recoge la reacción de la recurrente en las siguientes palabras: "[l]a Subdirectora dijo que el trabajo no era solamente sacar cartas y que el Asistente Daniel sabe que ella lo pellizca. La Directora respondió que ella no iba a permitir eso, que eso es agresión y no lo iba a tolerar". Sobre los pellizcos el señor Olmo informó que "en varias ocasiones ha

mencionado que si no hago lo que ella dice me pellizca y lo ha hecho como si fuera un modo jocoso". La Minuta de la reunión del 18 de julio de 2025, reunión celebrada entre la Directora Regional y una de las Supervisoras del centro relata otro incidente entre la Subdirectora y una Supervisora, la supervisora explicó que:

> [T]ambién ocurrió otra situación cuando estaba la pasada Directora, que la Subdirectora Michelle Dapena siempre estaba solicitando a los empleados que hicieran café y también se lo pedía a Nixalis y que un día Nixalis le dijo que no iba a hacerlo y la Subdirectora le dijo que iba a agarrarla por el pelo para que lo hiciera y es por eso, Nixsalis envió un correo electrónico informando de la situación a Operaciones en aquel momento.

El incidente indicado arriba ocurrió el 23 de agosto de 2024 descrito en la carta con fecha de 25 de agosto de 2024. La carta, escrita por la persona afectada, relata el incidente:

> El pasado 23 de agosto de 2024, a eso de las 3:20 de la tarde, me encontraba discutiendo un caso con la Sra. Nellie Tirado, Supervisora.
>
> Para ese momento la señora Michelle Dapena, Subdirectora, como todas las tardes comienza a preguntar si nadie hace café en las tardes.
>
> Esta procede a entrar a la Oficina de la señora Tirado y cito: "Aquí no hacen café en las tardes?" a lo que yo contesté "no, que si alguien quiere lo prepara".
>
> En ese momento me dice la señora Dapena y cito nuevamente: "¿y si te cojo por ese moño para llevarte a la cocina y que tú me haces café?" A lo que procedí a mirarla y quedarme callada, ante tal falta de respeto, ya que, en la Oficina habían lesionados presentes.

En reunión celebrada el 23 de mayo de 2025 la Directora Regional increpó a la recurrente por no haber seguido sus instrucciones de trabajo. La minuta de la reunión relata los particulares del incidente:

> Luego de los acuerdos llegados en la reunión del jueves, 15 de mayo; y como consecuencia de que la Sra. Michelle Dapena no ejecutó el plan establecido para impactar el área de recobro durante las vacaciones de la compañera Johanarys Ríos Zayas; la Sra. Miriam Santiago le hace una exhortación a la señora Dapena sobre la importancia de seguir las instrucciones y los planes que se establecen como equipo gerencial. ... La señora Dapena argumentó no recordar el plan establecido.

Todo lo anterior demuestra una deficiencia grave de comportamiento y carácter que impide a la recurrente seguir instrucciones de trabajo, escuchar el parecer de sus compañeros de trabajo sin airarse y evitar actuar agresivamente en contra de ellos. En este punto citamos la conclusión de la funcionaria de Recursos Humanos a cargo de la investigación sobre la conducta de la parte recurrente:

> Los hechos descritos generaron un ambiente de tensión y hostilidad, afectando la dignidad y el ejercicio profesional de los empleados; especialmente de aquellos que presenciaron cuando la querellante tiró el celular sobre la mesa mientras se llevaba a cabo una reunión.

Luego de estos incidentes la parte recurrente fue trasladada a la Oficina Regional de Ponce. Las reacciones de los empleados de la Oficina Regional de Caguas demuestran alivio debido a la ausencia de la conducta antijurídica de la parte recurrente, según una de las empleadas: "[a]hora mismo ella no está y lo que se respira es paz en la oficina".

Todo empleado de la ACAA debe satisfacer los criterios de productividad, eficiencia, orden y disciplina que deben prevalecer en el servicio público. El Artículo 11 del Reglamento de Conducta establece las Guías sobre Medidas Correctivas y Acciones Disciplinarias. El artículo establece las faltas y medidas disciplinarias que corresponden a primeras ofensas desde el rango de mínimo (reprimenda escrita), y máximo (suspensión de empleo y sueldo por 30 días) hasta progresivamente alcanzar la destitución del funcionario en caso de repetición. Conforme el Artículo 11 del Reglamento de Conducta, las faltas imputadas a la recurrente incluyen como medida disciplinaria, en primera ofensa como punto mínimo una reprimenda escrita, y máximo la suspensión de empleo y sueldo por treinta (30) días.

Un empleado de carrera tiene un interés propietario protegido sobre su empleo cuando existe una expectativa de continuidad sobre el puesto. *Díaz Carrasquillo v. García Padilla,* 191 DPR 97, 111 (2014); *Díaz Martínez v. Policía de P.R.*, 134 DPR 144, 148 (1993), *Orta v. Padilla Ayala,* 131 DPR 227, 241 (1992); *Torres Solano v. PRTC,* 127 DPR 499, 523 (1990); *Morales Narváez v. Gobernador,* 112 DPR 761, 767 (1982); *Pierson Muller I v. Feijoó,* 106 DPR 838, 852 (1978); *Board of Regents v. Roth,* 408 US 564, 577 (1972). En atención al debido proceso de ley, una agencia solo puede destituir a un empleado de carrera por justa causa, previa notificación de formulación de cargos por escrito y apercibimiento de su derecho a solicitar vista previa. *Adventist Health v. Mercado Ortiz,* 171 DPR 255, 263-64 (2007). De ahí que, aquellos empleados con carácter permanente posean una expectativa de continuidad en el empleo, que forma parte de su derecho de propiedad, de la cual no pueden ser privados sin que medie el debido proceso de ley. Art II, Sec. 7, Const. E.L.A., LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. En cuanto al procedimiento o debido proceso a un empleado de carrera cuando está la intención de privarle de su empleo, en *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 DPR 881, 888 (1993), el Tribunal Supremo señaló que "[d]ependiendo de las circunstancias, diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental debe ser justo e imparcial". *Domínguez Castro v. E.L.A.,* 178 DPR 1, 47 (2010) Asimismo, mediante la casuística quedó establecido diversos requisitos con los que debe cumplir todo procedimiento adversativo para satisfacer las exigencias mínimas de un debido proceso procesal, a saber: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y

examinar evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el récord. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, *supra*, pág. 889. En fin, lo primordial es asegurar que, las actuaciones del Estado sean justas e imparciales. *Díaz Carrasquillo v. García Padilla, supra*, págs. 110–111 (2014); *E.L.A. et al. v. Molina Figueroa*, 186 DPR 461, 471 (2012); *Rivera Rodríguez & Co. v. Lee Stowell, etc., supra*, págs. 887–888.

En este caso la recurrente disfrutó de las garantías mínimas que dispone el derecho a un debido proceso de ley. Fue notificada adecuadamente sobre las intenciones de su patrono, tuvo oportunidad de ser escuchada ante un ente imparcial, compareció a los procedimientos con su representante legal y finalmente esta revisión judicial asegura que, la decisión de la entidad gubernamental concernida, está fundamentada en el récord del caso. Igualmente, somos de la opinión que la ACAA cumplió con la reglamentación aplicable al momento de ocurrir los hechos. El expediente administrativo demuestra que, la ACAA previo a notificar la intención de suspensión a la recurrida, trató mediante amonestaciones verbales, amonestaciones escritas, en reuniones grupales e individuales de corregir la conducta impropia de la recurrente. Sin embargo, sus esfuerzos fueron infructuosos.

El empleado afectado tiene un interés propietario que merece protección, pero igualmente el gobierno como patrono posee intereses gubernamentales que deben ser igualmente protegidos. Según explico el Tribunal Supremo en, *Torres Solano v. P.R.T.C., supra*, pág. 522:

> El Estado tiene un legítimo interés en… preservar dentro del servicio público a aquellos empleados que ocupan un puesto de carrera y se desempeñan adecuadamente. En última instancia, el interés del Estado al considerar la destitución de un servidor público es el lograr una gestión pública eficaz, excelente, regular y productiva a través de la

retención de los servidores públicos productivos, eficientes, disciplinados y con un alto grado de motivación y espíritu de servicio.

Nuestra función, como tribunal apelativo en materia administrativa, es delinear la discreción de las entidades gubernamentales para garantizar que sus decisiones no sobrepasen el marco de los poderes delegados y sean consecuentes con la política pública que las origina. *Torres Rivera v. Policía de PR*, 196 DPR 606, 625–626 (2016); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999). Según muestra el expediente administrativo, el patrón de faltas disciplinarias de la parte recurrente continuó por varios años, al menos desde el 2024, situaciones discutidas con la parte recurrente de forma periódica verbalmente, en reuniones y por escrito, sin mejoría. Surge de la prueba documental presentada por la ACAA que, la parte recurrida conocía las faltas, y la conducta que debía evitar o mejorar. Esto al informársele en reuniones individuales y grupales, estas conductas fueron: (1) múltiples y reiteradas conductas antijurídicas desplegadas por la empleada consistentes en la creación de un ambiente laboral hostil y ofensivo; (2) abruptas alteraciones de humor; (3) maltrato y agresividad verbal hacia sus compañeros de trabajo; (4) amenazas de agresión física; (5) falta de control emocional durante reuniones; (6) tirar su celular y una libreta; (7) agresiones físicas a uno de sus supervisados; e (8) insubordinación al desobedecer órdenes de su supervisora inmediata.

La evidencia documental demuestra que la empleada fue advertida en múltiples ocasiones sobre el desvío en su conducta, pero optó por ignorar las correcciones y desafiar activamente la autoridad al continuar con su mala conducta, lo que confirma su resistencia a la supervisión. Las actuaciones de la recurrida son una muestra de actitud de insubordinación a instrucciones directas de sus superiores sobre aspectos labores sobre los cuales

debía mejorar. Los años de experiencia laboral de la recurrida en la ACAA debieron ser suficientes para percatarse que esa actuación, junto al patrón de faltas recurrentes discutidos, son actuaciones contrarias a derecho y está en contravención con lo que, el Pueblo espera de sus funcionarios. Ante la gravedad de la conducta de la empleada, la determinación de la ACAA de suspenderla de empleo y sueldo por treinta (30) días laborables no fue irrazonable, ilegal, arbitraria o caprichosa. Por el contrario, la recurrente violó simultáneamente varias normas de conducta de la ACAA. Ante esto, la determinación de suspensión de empleo y sueldo está dentro de la discreción de la ACAA.

En resumen, ante los hechos particulares de este caso y el análisis sosegado y balanceado de los factores relevantes según surgen del expediente administrativo, es forzoso concluir que las infracciones múltiples que la parte recurrida cometió fueron de tal gravedad que justificaban la actuación de la Directora Ejecutiva de la ACAA de imponer discrecionalmente la sanción máxima en el rango correspondiente a la primera ofensa para las faltas imputadas. Por tanto, el CRIM actuó razonablemente y dentro de los límites establecidos en la reglamentación vigente. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

### -*IV*-

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, *confirmamos* la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones